6
WALTER & WILHELM LAW GROUP
a Professional Corporation
Riley C. Walter #91839
8305 North Fresno Street, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@W2LG.com

Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>SIERRA KINGS HEALTH CARE DISTRICT, a California Health Care District,<br><br>Debtor.<br><br>Tax ID #: 94-1529883<br>Address: 372 W. Cypress Avenue<br>Reedley, CA 93654 | CASE NO. 09-19728-B-9<br><br>Chapter 9<br><br>DC No.: WW-28<br><br>Date: March 31, 2010<br>Time: 9:00 o'clock<br>Place: 2500 Tulare Street<br>Fresno, CA 93721<br>Courtroom 12<br>Judge: Honorable W. Richard Lee |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AUTHORITY TO BORROW AND GIVE SECURITY**

TO THE HONORABLE W. RICHARD LEE, UNITED STATES BANKRUPTCY JUDGE:

The Debtor, Sierra Kings Health Care District ("Debtor"), hereby submits these Authorities in support of its Motion for Authority to Borrow and Give Security ("Motion"). Per the Motion, the Debtor seeks an interim and final order, pursuant to Section 364 of the Bankruptcy Code and Rule 4001(c) and (d) of the Federal Rules of Bankruptcy

Procedure, authorizing the Debtor to obtain Post Petition financing from the City of Reedley (the "Reedley Funds") and HFS Consultants ("Lenders"), in the amount of $1,600,000. The loan will be repaid from certain matching IGT Funds to be received. After repayment of the Reedley Funds the Debtor will net about $1,500,000 to be used in its operations pursuant to the 2006 Indenture Trust.

The terms and conditions of the loan are set out in the Agreements ("Agreements") attached to the Declaration of Sanford Haskins.

The loan will have an interest rate of 5% per annum and be due on receipt of the IGT Funds or on three (3) months from the date of the Note, whichever is earlier. The loan will be secured by a first priority security interest in the IGT Funds. There will be no prepayment penalty.

## I.
## THE DEBTOR HAS SATISFIED THE LEGAL REQUIREMENTS FOR APPROVAL OF THE POST PETITION FINANCING

As a Chapter 9 Debtor, the Debtor may incur unsecured debt in the ordinary course of business. 11 U.S.C. § 364(a). However, the Bankruptcy Code offers a Debtor additional flexibility to the extent it needs additional credit, but cannot attract such credit on unsecured terms. Bankruptcy Code Section 364 provides a progression of various protections to induce a post-petition lender to extend credit to a Debtor.

The necessity for obtaining the post-petition financing from Lender has been fully described above and in the accompanying Haskins Declaration and will not be repeated here. Bankruptcy Code Section 364 governs a Debtor's ability to incur debt or obtain credit post-petition. More specifically, subsections (c)(1) and (d) of Bankruptcy Code Section 364 address the incurrence of post-petition credit on a "superpriority" or senior secured basis.

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AUTHORITY TO BORROW
AND GIVE SECURITY

M:\S-U\Sierra Kings Health Care
District\Pleadings\WW-28 Motion to Borrow
and Give Security\points.v3.032410.gaa.docx

In order to obtain post-petition credit on "superpriority" basis or by granting a priming lien, a Debtor must show that it is unable to obtain the necessary credit otherwise and the lien holder to be primed is adequately protected. Section 364(d)(1)(A) of the Bankruptcy Code, however, does not impose upon a Debtor the onerous duty to seek credit from every possible lender before concluding that such credit is available. *See Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (holding that contacting four financial institutions regarding a loan satisfied the requirements of Bankruptcy Code section 364(d)(1)(A)). Instead, a good faith effort to obtain less burdensome credit from other sources are all that is required of a Debtor, especially when time is of the essence, as here. *See, e.g., Id.; In re Reading Tube Indus.*, 72 B.R. 329, 333 (Bankr. E.D. Pa. 1987); *In re Stacy Farms*, 78 B.R. 494, 498 (Bankr. S.D. Ohio 1987).

### A. The Debtor Has Satisfied the Requirements Under Section 364(c)(1)

Other than the requirement of "notice and a hearing," the only statutory prerequisite for obtaining credit on a secured basis on a "superpriority" basis under section 364(c)(1) is that "the [Debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense." This threshold test is satisfied here.

As set forth in the Haskins Declaration, the Debtor has been unable to obtain unsecured credit sufficient to finance the recovery of the matching funds described above ("Post-Petition Financing Purposes"). The Debtor cannot obtain alternative financing on an unsecured basis, even if the resulting claim were to be allowed as an administrative claim. Consequently, the Debtor should be permitted to borrow under the

-3-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AUTHORITY TO BORROW
AND GIVE SECURITY

M:\S-U\Sierra Kings Health Care
District\Pleadings\WW-28 Motion to Borrow
and Give Security\points.v3.032410.gaa.docx

Agreements on a "superpriority" basis from Lender under section 364(c)(1), as such borrowing is the only source of monies available to the Debtor at this time to fund the Post-Petition Financing Purposes.

### B. The Debtor Has Satisfied the Requirements of Bankruptcy Code Section 364(d)

The only statutory prerequisites for obtaining credit on a senior secured basis under Bankruptcy Code section 364(d) are that "the [Debtor] is unable to obtain such credit otherwise" and that "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d). Each of these tests is satisfied in this case.

As set forth above, the Debtor simply cannot obtain alternative financing on any basis other than that set forth in the Agreement. Lenders have decided to extend credit without a first "superpriority" and "senior secured" protections afforded by Bankruptcy Code sections 364(c)(1) and (d), and the Debtor has been unable to obtain financing on any other feasible and more favorable terms. *See* Haskins Declaration.

Further, the 2006 revenue bond Indenture Trustee has consented to the terms of the proposed borrowing on the express terms of the proposed order. This consensual approach obviates the need for the adversarial "priming" and the accompanying need for a showing of adequate protection, that would otherwise be necessary if it did not so consent. *See* Haskins Declaration.

### C. Approval of the Post-Petition Financing is Supported by the Exercise of Sound Business Judgment

The fact that the Debtor has satisfied the requirements of Bankruptcy Code Section 364, of course, does not end the inquiry, as these sections are permissive, not

-4-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR AUTHORITY TO BORROW
AND GIVE SECURITY

M:\S-U\Sierra Kings Health Care
District\Pleadings\WW-28 Motion to Borrow
and Give Security\points.v3.032410.gaa.docx

mandatory. *See* 11 U.S.C. § 364(c)(1) and (d) ("after notice and a hearing", the court "may authorize the obtaining of credit or the incurring of debt"). Generally, however, courts give broad deference to business decisions of a Debtor. *See, e.g., Richmond Leasing v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, a Bankruptcy Court generally will respect a Debtor in Possession's business judgment regarding the need for and the proposed use of funds. This is even more true in the case of a Chapter 9 Debtor.

In the present case, the Debtor's decision to enter into the Agreements represents an exercise of sound business judgment. Without such financing, the Debtor does not have the funds needed to acquire the matching funds, which are necessary and critical to ensure that the matching funds are received so the net amount can be used for operational purposes, providing health care to the residents of the District.

Further, the Debtor believes that the terms of the Post-Petition Financing are more favorable to the Debtor than any other financing arrangement it could realistically expect to obtain from any other financing source. Indeed, with no alternative relationship with the Debtor or understanding of the Debtor's business, the time it would take to negotiate and document a loan with a new lender combined with the expense and delay that will result from litigation with Lenders over the terms and conditions of such new financing, make alternative financing prohibitive. *See* Haskins Declaration.

### D. The Court Should Approve the Post-Petition Financing and Set a Final Hearing

The Debtor has requested that the Court: (i) approve $1,599,999 of the $1,600,000 of the Post-Petition Financing from Lenders pending a final hearing; and (ii) promptly schedule such a hearing to consider final approval of the balance of the

requested Post-Petition Financing pursuant to the Agreement. In accordance with Bankruptcy Rule 4001(c)(2), the Debtor has requested an order approving advance of $1,599,000 of the the Post-Petition Financing as required to avoid immediate and irreparable harm pending a final hearing and because it is a condition of Lenders' willingness to lend and because of the deadline for submission to CMAC.

The Post-Petition Financing from Lenders is needed to put up the funds to acquire the matching funds. Thus, the relief requested by the Debtor, which is subject to final hearing, is precisely what is contemplated by Bankruptcy Rule 4001(c)(2) and should be granted to avoid immediate and irreparable harm to the Debtor.

The Debtor seeks authority to borrow $1,599,999 so it can meet the deadline of March 31, 2010.

## II.
## CONCLUSION

WHEREFORE, based upon the foregoing, the Debtor requests that the Court grant the relief requested in the Motion, and for such other relief as the Court deems just and proper.

Dated: March 24, 2010

WALTER & WILHELM LAW GROUP
a Professional Corporation

By: _____
Riley C. Walter, Attorneys for Debtor