FILED
October 21, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003018201

7
WALTER & WILHELM LAW GROUP
a Professional Corporation
Riley C. Walter #91839
Michael L. Wilhelm #101495
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:   (559) 435-9800
Facsimile:   (559) 435-9868
E-mail:      rileywalter@W2LG.com

Attorneys for Debtor

(SPACE BELOW FOR FILING STAMP ONLY)

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**SIERRA KINGS HEALTH CARE DISTRICT**, a California Health Care District,<br><br>    Debtor.<br><br>Tax ID #:  94-1529883<br>Address:   372 W. Cypress Avenue<br>                  Reedley, CA 93654 | CASE NO. 09-19728-B-9<br>Chapter 9<br>DC No.: WW-48<br><br>Date:    October 27, 2010<br>Time:   10:00 o'clock<br>Place:   2500 Tulare Street<br>          Fresno, CA 93721<br>          Courtroom 12<br>Judge:  Honorable W. Richard Lee |

**MOTION FOR AUTHORITY TO BORROW AND GIVE SECURITY**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Sierra Kings Health Care District (hereinafter "Debtor") hereby submits this Motion for Authority to Borrow and Give Security ("Motion"). Per the Motion, the Debtor seeks an order, pursuant to Sections 364(c)(2), 364(c)(3), 364(d), 364(e), 503(b) and 507(a) of the Bankruptcy Code and BR 4001(d), in the form included herewith as Exhibit "A" authorizing the Debtor to obtain Post Petition Financing from the Hanford Community Hospital ("Lender") in the amount of up to $1,500,000.00 (the "Agreement"). Of this sum, the Debtor seeks to borrow up to $500,000 on an emergency basis, with

the balance to be authorized at the final hearing on the Motion, at a date to be set by the Court at the conclusion of the emergency borrowing hearing. In support of the Motion, the Debtor alleges as follows:

1. The Debtor has urgent need to borrow money due to delayed receipts from other sources, including the State of California. Without the borrowing, the Debtor will likely have to suspend some important operations. There is a critical need for this funding.

2. On October 8, 2009, the Debtor filed a Chapter 9 case in the United States Bankruptcy Court for the Eastern District of California, Fresno Division.

3. The Debtor is a California health care district serving the needs of hundreds of thousands of people in the southeast part of Fresno County and northeast part of Tulare County.

4. The Debtor has become aware of a significant revenue shortfall largely attributable to the delay in passing a budget for the State of California.

5. Assembly Bill 1653 allowed for a "fee" to be levied on California hospitals, except district hospitals like Sierra Kings, that would become state general funds eligible for federal matching under the Medi-Cal program. This will provide increased payment for services rendered to Medi-Cal patients, separate from ongoing state Medi-Cal funding. The program is in the early stages of implementation and hospitals recently paid their first installment of fees under the program. The fees and the accompanying federal match will be paid to hospitals over the next five months.

6. Sierra Kings will receive total payments of approximately $2.1 million. The payment scheme for Sierra Kings is heavily "backloaded" to the period from December 15, 2010 to February 28, 2011. About $1.3 million will be paid in that period. Sierra

Kings' management included the $2.1 million of AB 1653 funding as a critical factor in a breakeven budget for fiscal 2011. Management contemplated five equal payments beginning in September 2010 based on information from the hospital trade association and other sources. The actual payout may well differ significantly from those expectations because of the backloaded situation described above. This will result in extreme pressure on operating cash resources. The District's aggregate cash receipts under AB 1653 between now and March 2011 are sufficient to fund operations, however, the timing of such receipts results in serious near term shortfalls. The proposed financing arrangement will enable the District operate as if the actual timing of AB 1653 payments was similar to that contemplated in its fiscal 2011 budget.

7. By the motion, the Debtor seeks authority to borrow up to $1.5 million dollars (the "Borrowed Funds") from Hanford Community Hospital. Said 1.5 million dollars will be secured by a first priority lien on certain AB 1653 funds that the Debtor is due to receive. Debtor will also be granting a lien junior to other secured creditors on its assets.

8. The Debtor seeks to borrow up to $1.5 million dollars for use in its operations and will repay the bridge loan from the AB 1653 funds it expects to receive between December 15, 2010 to February 28, 2011.

9. Of the requested $1.5 million, the Debtor seeks to borrow up to $500,000 on an emergency basis to be used to meet current operating cash requirements over the next two weeks. In particular the funding will be used to cover payroll, payroll taxes and vendor payments.

10. The following terms are usual and customary for facilities of this nature, including, but not limited to:

(i) Entry of an interim and final Order (Exhibit A) by the Bankruptcy Court approving the DIP Financing in form and substance satisfactory to the Lender and consistent with the terms set forth in the Term Sheet attached as Exhibit B (the "Interim Order" and "Final Order"), including a finding that the Lender acted in good faith for the purposes of Section 364(e) of the Bankruptcy Code. The Interim Order and Final Order (collectively, the "DIP Orders"). Upon entry of the Interim Order the Lender shall lend up to $500,000 with the balance of the funds not being advanced until the Final Order is issued.

(ii) Lender's satisfaction that prior to the entry of the each of the Interim Order and the Final Order, no material adverse change in the financial condition, business, prospects, profitability, assets of operation of has occurred. It is understood and agreed that any adverse change in the terms, conditions, assumptions or projections supplied by Borrower and on which Lender based its decision to issue this Commitment Letter may, in Lender's reasonable discretion, be construed by Lender as a material adverse change.

(iii) The accuracy in all material respects of all representations and warranties of the Borrower in the Loan Documents.

(iv) The satisfactory negotiation, execution and delivery of loan documents (reasonably requested by the Lender) relating to the DIP Facility including, without limitation, credit agreements, security agreements, and other related definitive documents (collectively, the "Loan Documents") to be based upon and substantially consistent with the terms set forth in Exhibit B.

(v) All reasonable costs, fees, expenses (including, without limitation,

legal fees and expenses, and recording taxes and fees) incurred by the Lender in negotiating and documenting this loan shall be paid from the proceeds of the loan.

(vi) The DIP Liens on the Collateral shall be fully perfected, and Lender shall have received reasonably satisfactory confirmation of the priority of its DIP Liens.

(vii) The Lender shall have received satisfactory evidence that either no defaults or events of default exist, or would arise as a result of the consummation of the DIP Facility under the outstanding credit facilities, loans or material contracts of the Borrower, or if defaults or events of default exist or would arise, forbearance agreements with respect to such facilities or indebtedness in each case in form and substance satisfactory to the Lender.

(viii) The Borrower shall have received all required governmental approvals and consents to enter into the Loan Documents and perform its obligations thereunder.

(ix) The Borrower shall have established a separate DIP account into which all AB 1653 funds shall be placed only payments consistent with the Mandatory Payments provisions from above shall be made from this account until Lender is paid off in full.

(x) No litigation that purports to affect the legality, validity or enforceability of the DIP Facility or the liens granted to the Lender.

(xi) The Lender shall have received satisfactory evidence that no defaults or events of default exist, or would arise as a result of the DIP Facility, that would in any way impair or delay the receipt by the Borrower of the AB 1653 funds.

(xii) No default or event of default under the Loan Documents.

11. The Debtor contends that the Borrowed Funds are not "special revenues" as defined in Chapter 9 of Title 11, nor otherwise subject to any perfected security interest or lien. As such, the Borrowed Funds to be received are not subject to existing liens or encumbrances, however, out of an abundance of caution, the Debtor seeks authority to borrow the needed funds from Hanford Community Hospital by giving a Section 364(d) security interest in the AB 1653 funds just in case any existing liens do exist.

12. Thus, in essence, the Debtor seeks authority to borrow up to $1.5 million dollars from Hanford Community Hospital. It will pay interest on the borrowed funds at the rate of 5% per annum. To secure repayment the Debtor will give a first priority security interest to Hanford Community Hospital on the AB 1653 funds to be received as well as a junior liens or other assets.

13. Nothing in this Motion is intended to abridge or amend any provision of the Orders on the Motion for Authority to Compromise entered by this Court on December 24, 2009 and on September 13, 2010, or other orders of a like nature.

14. The Debtor seeks to borrow said sums from other lenders without success. The Debtor asserts that the subject loans from Hanford Community Hospital is commercially reasonable under the extraordinary circumstances and with the use of the funds to be borrowed the Debtor will continue to operate and avoid a discontinuance of operations.

15. The Debtor has sought the consent to the borrowing from Bank of New York Mellon, the Indenture Trustee on the Debtor's 2006 revenue bonds. However, a decision has not yet been given.

///

WHEREFORE, the Debtor prays that it be authorized to borrow up to $1.5 million dollars, with up to $500,000 to be allowed on an emergency basis, from Hanford Community Hospital on the terms aforesaid and referenced herein, for waiver of the notice requirements of BR 6004(a) and 21 day stay of BR 6003(b), and seeks such other and further relief as is just and proper, with a final hearing to be set on the Motion.

Dated: October 4, 2010

WALTER & WILHELM LAW GROUP
a Professional Corporation

By: _____
Riley C. Walter, Attorneys for Debtor

MOTION FOR AUTHORITY TO BORROW AND GIVE SECURITY -7- M:\S-U\Sierra Kings Health Care District\Pleadings\WW-48 Motion to Borrow and Give Security\motion.102110.v4.gaa.docx