FILED
September 30, 2013 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003802819

1  WALTER & WILHELM LAW GROUP
   a Professional Corporation
2  Riley C. Walter #91839
   205 E. River Park Circle, Suite 410
3  Fresno, California 93720
   Telephone:   (559) 435-9800
4  Facsimile:    (559) 435-9868
   E-mail:        rileywalter@W2LG.com
5

6  Attorneys for SIERRA KINGS HEALTH CARE DISTRICT

7           IN THE UNITED STATES BANKRUPTCY COURT

8             EASTERN DISTRICT OF CALIFORNIA

9                    FRESNO DIVISION

10 | In re                              | CASE NO.  09-19728-B-9
11 | SIERRA KINGS HEALTH CARE           | Chapter  9
   | DISTRICT,                          |
12 |                                    | DC No.: WW-64
13 |              Debtor.               |
   |                                    | Date:   November 10, 2011
14 | Tax ID#:   94-1529883              | Time:   9:00 a.m.
   | Address:   372 W. Cypress Avenue   | Place:  2500 Tulare St.,
15 |            Reedley, CA 93654       |         Courtroom #12
   |                                    |         Fresno, California
16 |                                    | Judge:  Honorable W. Richard Lee

17               **PLAN FOR THE ADJUSTMENT OF DEBTS OF**
   **SIERRA KINGS HEALTH CARE DISTRICT DATED AS OF SEPTEMBER 15,**
18                                **2011**

19         Sierra Kings Health Care District (the "District", or "Debtor" or "SKHCD"), a

20 California local healthcare district and a debtor under Chapter 9 of the United States

21 Bankruptcy Code, hereby proposes the following· Plan of Adjustment of Debts (this

22 "Plan") pursuant to Section 941 of the Bankruptcy Code.[1]

23         On April 14, 2011, at a special public meeting, the District's Board of Directors

24 ("Board") considered and approved the Letter of Intent executed on April 14, 2011

25

26    ---

   [1]The definitions of capitalized terms used throughout this Plan are set forth in
27 Section 1.A.

28

1  (the "ASA") and Lease, by and between the District and Adventist Health ("AH") that

2  provides for a sale of substantially all of the District's assets to AH. A ballot measure

3  authorizing the Board to enter into the ASA and Lease was passed by the voters of

4  the District on June 7, 2011. Over 95% of those voting approved the measure.

5      Please refer to the accompanying Disclosure Statement for a discussion of the

6  District's history, operations, financial condition, for a summary and· analysis of this

7  Plan and other important information. A copy of the definitive documents of the ASA

8  and Lease will be posted to the website of counsel for the Debtor at

9  http://skhcd.W2LG.com. The District encourages you to read this Plan and the

10  Disclosure Statement in their entirety before voting to accept or reject this Plan. No

11  materials other than the Disclosure Statement and the Exhibits and Schedules

12  attached to or incorporated in the Plan have been approved for use in soliciting

13  acceptances or rejection of this Plan.

14
**I.**
**DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**
15

16      **A.      Definitions.**

17      1.      **Administrative Claim** means any Claim for an administrative

18  expense of the kind described in Sections 503(b) or 507(a)(2) of the

19  Bankruptcy Code.

20      2.      **Adventist Health** means Adventist Health Central Valley

21  Network, also known as AH.

22      3.      **Allowed** means a Claim that:

23      a.      Is asserted in a Proof of Claim filed in compliance with

24  Section 501 of the Bankruptcy Code and any applicable orders of the

25  Bankruptcy Court and as to which: (i) no objection has been filed within the

26  deadline established pursuant to Section IX; X(ii) the Bankruptcy Court has

27

entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed); or (iii) the Bankruptcy Court has entered a Final Order under Section 502(c) of the Bankruptcy Code estimating the amount of the Claim for purposes of allowance;

b.     Is subject to a stipulation between the District and the holder of such Claim providing for the allowance of such Claim;

c.     Is designated as "allowed" in a pleading filed with the Bankruptcy Court by the District on or after the Effective Date; or

d.     Is an Administrative Claim as to which the Bankruptcy Court has entered a Final Order allowing all or a portion of such claim (but only in the amount so allowed).

4.     **ASA** means the Asset Sale Agreement and Lease embodied in the Letter of Intent ("LOI") dated April 14 , 2011, by and between AH and the District.

5.     **Assumption/Assignment Motion** means the motion to be filed with the Bankruptcy Court prior to closing, in which the District will seek approval of the assumption and immediate assignment of the executory contracts and unexpired leases as are set forth or provided for in the ASA, pursuant to Section 365(a) and (f)(2) of the Bankruptcy Code.

6.     **Ballot** means the ballot(s), in the forms approved by the Bankruptcy Court in the Plan Solicitation Order, accompanying the Disclosure Statement and provided to each holder of a Claim entitled to vote to accept or reject this Plan.

7.     **Bankruptcy Code** means title 11 of the United States Code as amended from time to time, as applicable to the Chapter 9 Case.

8     **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of California, Fresno Division, or such other court that lawfully

1   exercises jurisdiction over the Chapter 9 Case.

2       9.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy

3 Procedure as amended from time to time, as applicable to the Chapter 9 Case,

4 together with the local rules of the Bankruptcy Court applicable to the Chapter 9

5 Case.

6       10.    **Bar Date** means the applicable date by which a particular Proof

7 of Claim must be filed, as established by the Bankruptcy Court.

8       11.    **Bond Documents** means any pre-existing legal agreements

9 governing the District's bonded indebtedness.

10       12.    **Bondholders** mean the owners of the Bonds.

11       13.    **Bonds** means, collectively, the District's revenue bond and

12 general obligation bond indebtedness.

13       14.    **Cash** means cash and cash equivalents, including withdrawable

14 bank deposits, wire transfers, checks, and other similar items.

15       15.    **Chapter 9 Case** means the case under Chapter 9 of the

16 Bankruptcy Code commenced by the District, styled as In Re Sierra Kings Health

17 Care District, Case No. 09-19728-B-9, currently pending in the Bankruptcy Court .

18       16.    **Claim** means a claim against the District or the property of the

19 District within the meaning of Section 101(5) of the Bankruptcy Code.

20       17.    **Class** means one of the classes of Claims established under

21 Section III pursuant to Section 1122 of the Bankruptcy Code.

22       18.    **Collateral** means any property or interest in property of the

23 District subject to a lien or security interest that is not subject to avoidance under the

24 Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable

25 federal and/or state law.

26       19.    **Committee** means the Committee of Unsecured Creditors of

1   Sierra Kings Health Care District, appointed in the Chapter 9 Case by the Office of

2   the United States Trustee pursuant to Section 1102(a)(1) of the Bankruptcy Code as

3   the membership thereof may have been reconstituted from time to time by the Office

4   of the United States Trustee's Office.

5         20.     **Confirmation Date** means the date on which the Clerk of the

6   Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy

7   Court.

8         21.     **Confirmation Order** means the order of the Bankruptcy Court

9   confirming this Plan under Section 943 of the Bankruptcy Code.

10         22.     **Disallowed** means a Claim or portion thereof that has been

11   disallowed by an Order.

12         23.     **Disclosure Statement** means the disclosure statement, and all

13   exhibits and schedules addressed therein and attached to the Plan and that is

14   approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code,

15   as the same may be amended; modified or supplemented in accordance with the

16   Bankruptcy Code.

17         24.     **Disputed Claim** means any Claim or portion thereof that has not

18   become Allowed and that is not Disallowed. In the event that any part of a Claim is

19   Disputed, except as otherwise provided in this Plan, such Claim shall be deemed

20   Disputed in its entirety for purposes of distribution under this Plan unless the District

21   agrees otherwise in its sole discretion. Without limiting the foregoing, a Claim that

22   is the subject of a pending application, motion, complaint, objection, or any other

23   legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such

24   Claim shall be deemed to be Disputed.

25         25.     **District** means Sierra Kings Health Care District; a California

26   local healthcare district, and the Debtor in the Chapter 9 Case.

27

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA           M:\S-U\Sierra Kings Health Care
KINGS HEALTH CARE DISTRICT DATED AS OF       5       District\Confirm\Final\Plan.ptw.092811.wpd
SEPTEMBER 15, 2011

26.     **District Assets** means all the assets of the District which the District has agreed to transfer to AH at closing of the Transaction pursuant to the ASA.

27.     **Effective Date** means the first day after the date on which the conditions specified in Section XII.B have been satisfied or waived.

28.     **Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is then pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

29.     **Impaired** means a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

30.     **Indenture Trustee** means The Bank of New York Mellon Trust Company, N.A. when acting in that capacity in respect of the 2006 A and B Revenue Bonds.

31.     **Ordinary Course Administrative Claim** means an Administrative Claim, other than a Professional Claim, that represents an obligation incurred in the ordinary course of business of the District (as determined by the District in its sole discretion).

32.     **Petition Date** means October 8, 2009.

33.     **Plan** means this Plan of Adjustment of Debts, together with all Exhibits hereto, each in their present form or as they may be altered, amended or

---

1 | modified from time to time in accordance with the provisions of this Plan, the

2 | Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

3 |      34.    **Plan Agent** means the person designated by the Board whose

4 | name will be included in the Confirmation Order.

5 |      35.    **Plan Solicitation Order** means the Order approving the

6 | Disclosure Statement, by which the Bankruptcy Court approved the Disclosure

7 | Statement as containing adequate information for the purpose of dissemination and

8 | solicitation of votes on and confirmation of this Plan and established certain rules,

9 | deadlines, and procedures for the solicitation of votes with respect to and the

10 | balloting on this Plan.

11 |      36.    **Professional Claim** means a Claim required to be filed pursuant

12 | to Section II for approval of amounts paid or to be paid for services or expenses in

13 | the Chapter 9 Case or incident to this Plan.

14 |      37.    **Public Approval** means the requisite votes obtained in a public

15 | election held on June 7, 2011, in accordance with the requirements of California

16 | Health & Safety Code, allowing the District to consummate the Transaction as

17 | contemplated by the ASA.

18 |      38.    **Rejection Motion** means the motion to be filed, pursuant to

19 | Section 365(a) of the Bankruptcy Court by the District pursuant to which the District

20 | shall seek approval and authorization for the rejection of such executory contracts

21 | and unexpired leases as shall be identified in the Rejection Motion.

22 |      39.    **Rights of Action** means any rights, claims, or causes of action

23 | owned by, accruing to, or assigned to the District pursuant to the Bankruptcy Code

24 | or pursuant to any contract, statute, or legal theory, including without limitation any

25 | rights to, claims, or causes of action for recovery under any policies of insurance

26 | issued to or on behalf of the District.

27 |

28 |

40.     **Sale Closing Date** means the date that the Transaction is consummated pursuant to the ASA.

41.     **Secured Claim** means a Claim that is secured, in whole or in part, (a) by a lien that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law; or (b) as a result of rights of setoff under Section 553 of the Bankruptcy Code; but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the District's interest in property or to the extent of the amount subject to such setoff, as the case may be.

42.     **SSA Plan #1** means the "Sierra Kings Health Care District Social Security Alternative Plan Adopted December 30, 2002" as amended.

43.     **SSA Plan Participants** means the participants in the Sierra Kings Health Care District SSA #1 as represented by the Successor Trustees.

44.     **Transaction** means the sale/lease of the District Assets to AH pursuant to the ASA.

45.     **Unimpaired** means a Claim that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

46.     **Unsecured Claim** means any claim that is not a Secured Claim or an Administrative Claim.  Also referred to as a General Unsecured Claim.

**B.     Rules of Construction.**

The following rules of construction apply to this Plan: (a) unless otherwise specified, all references in this Plan to "Sections" and "Exhibits" are to the respective Section in or Exhibit to this Plan, as the same may be amended or modified from time to time; (b) the headings in this Plan are for convenience of reference only and do not limit or otherwise affect the provisions of this Plan; (c) words denoting the singular number include the plural number and vice versa; (d) the

1   rules of construction set forth in Section 102 of the Bankruptcy Code apply; (e) in

2   computing any period of time prescribed or allowed by this Plan, the provisions of

3   Bankruptcy Rule 9006(a) apply; and (f) the words "herein," "hereof;" "hereto,"

4   "hereunder," and others of similar import refer to this Plan as a whole and not to any

5   particular Section, subsection, or clause contained in this Plan.

6

**II.**
**TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE**

7   **CLAIMS AND PROFESSIONAL CLAIMS**

8     **A.    Treatment of Administrative Claims.**

9         **1.    Treatment of Administrative Claims, Except for Professional**

10            **Claims.**

11        From the Transaction sale proceeds, all Allowed Administrative

12   Expenses will be paid in full.

13        To the extent there are unpaid Administrative Claims at the Effective

14   Date, unless the holder of an Allowed Administrative Claim agrees to a different

15   treatment, the District or its agent shall pay to each holder of an Allowed

16   Administrative Claim, in full satisfaction, release and discharge of such Claim, cash

17   in an amount equal to such Allowed Administrative Claim on the later of (i) the

18   Effective Date, (ii) the date on which such Claim becomes an Allowed Administrative

19   Claim, or as soon thereafter as is practicable, and (iii) the date funds are to be

20   available.

21     **2.    Treatment of Professional Claims.**

22        Pursuant to Section 943(a)(3), all amounts paid or to be paid for

23   services or expenses in the Chapter 9 Case or incident to this Plan must be disclosed

24   to the Bankruptcy Court and must be reasonable. There shall be paid to each holder

25   of a Professional Claim from the District's cash on hand, in full satisfaction, release

26   and discharge of such Claim, cash in an amount equal to that portion of such Claim

27

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA            M:\S-U\Sierra Kings Health Care
28   KINGS HEALTH CARE DISTRICT DATED AS OF     9     District\Confirm\Final\Plan.ptw.092811.wpd
SEPTEMBER 15, 2011

1    that the Bankruptcy Court approves as reasonable with credit being given to the

2    extent such Claim previously has been paid, on or as soon as reasonably practicable

3    following the date on which the Bankruptcy Court enters an Order determining such

4    reasonableness.

5    **B.    Priority Claims in Chapter 9.**

6    The only kind of priority claims incorporated into Chapter 9 through

7    Section 901 are Administrative Claims allowed under Section 507(a)(2) of the

8    Bankruptcy Code. The treatment of all such Administrative Claims is set forth above.

9    No other kinds of priority claims set forth in Section 507 of the Bankruptcy Code are

10   recognized in Chapter 9 cases.

11   **C.    Deadline for the Filing and Assertion of Professional Claims.**

12   Unless an earlier date is set by the Court, all requests for payment or

13   any other means of preserving and obtaining payment of Professional Claims that

14   have not been paid, released, or, and all requests for approval of Professional

15   Claims, must be filed with the Bankruptcy Court and served upon the District no later

16   than thirty (30) days after the date on which the Notice of Effective Date is mailed.

17   Any request for payment of a Professional Claim that is not timely filed by such date

18   will be forever barred, and holders of such Claims shall be barred from asserting

19   such Claims in any manner against the District.

20   **III.**
     **DESIGNATION OF CLASSES OF CLAIM**

21

22   Pursuant to Section 1122, all Claims other than Administrative Claims

23   and· Professional Claims are classified for all purposes, including voting,

24   confirmation, and distribution pursuant to this Plan, as follows:

25   **Class 1**    Sierra Kings Health Care District Revenue Bonds, Series
                    2006 A and 2006 B
26

27

28

| | | |
|---|---|---|
| **Class 2** | Sierra Kings Health Care District General Obligation Bonds, Election of 2000, Series 2002 | |
| **Class 3** | Sierra Kings Health Care District General Obligation Bonds, Election of 2006, Series 2007 | |
| **Class 4** | Sierra Kings Health Care District General Obligation Bonds, Election of 2006, Series 2009 | |
| **Class 5** | SSA Plan #1 Plan | |
| **Class 6** | Zumwalt Construction, Inc. | |
| **Class 7** | United States Department of Agriculture | |
| **Class 8** | Administrative Convenience Claims | |
| **Class 9** | General Unsecured Claims | |
| **Class 10** | Dental Surgery Partnership Claims | |

## IV.
## TREATMENT OF CLAIMS

A.  **Class 1 - Claims of the Holders of Sierra Kings Health Care District Revenue Bonds, Series 2006 A and 2006 B.**

   1.    **Impairment and Voting.**

         Class 1 is unimpaired by this Plan since the treatment of this Class will not affect the legal, equitable or contractual right to which the holders of Claims in this Class are entitled and, accordingly, this Class is not entitled to vote to accept or reject this Plan.

   2.    **Treatment.**

         The Indenture Trustee for Class 1 will be paid in accordance with the Bond Documents and the defeasance agreement.

B.  **Class 2 - Sierra Kings Health Care District General Obligation Bonds, Election of 2000, Series 2002.**

   1.    **Impairment and Voting.**

         Class 2 is unimpaired by this Plan since the treatment of this

---

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA KINGS HEALTH CARE DISTRICT DATED AS OF SEPTEMBER 15, 2011                    11                    M:\S-U\Sierra Kings Health Care District\Confirm\Final\Plan.ptw.092811.wpd

Class will not affect the legal, equitable or contractual right to which the holders of Claims in this Class are entitled and, accordingly, this Class is not entitled to vote to accept or reject this Plan.

    **2.  Treatment.**

    Class 2 will be paid in accordance with the Bond Documents.

**C.  Class 3 - Sierra Kings Health Care District General Obligation Bonds, Election of 2006, Series 2007.**

    **1.  Impairment and Voting.**

    Class 3 is unimpaired by this Plan since the treatment of this Class will not affect the legal, equitable or contractual right to which the holders of Claims in this Class are entitled and, accordingly, this Class is not entitled to vote to accept or reject this Plan.

    **2.  Treatment.**

    Class 3 will be paid in accordance with the Bond Documents.

**D.  Class 4 - Sierra Kings Health Care District General Obligation Bonds, Election of 2006, Series 2009.**

    **1.  Impairment and Voting**

    Class 4 is unimpaired by this Plan since the treatment of this Class will not affect the legal, equitable or contractual right to which the holders of Claims in this Class are entitled and, accordingly, this Class is not entitled to vote to accept or reject this Plan.

    **2.  Treatment.**

    Class 4 will be paid in accordance with the Bond Documents.

**E.  Class 5 - Interests of SSA #1 Plan Participants.**

    **1.  Impairment and Voting.**

    Class 5 is unimpaired by this Plan and, accordingly, the SSA #1

1    Plan Participants are not entitled to vote such Allowed Claims as they may have to

2    accept or reject this Plan.

3              **2.    Treatment.**

4              Under the Plan, the SSA Plan #1 Plan Successor Trustees will

5    receive $1,314,998 upon the Effective Date. Said sums shall be paid to the

6    Successor Trustees of the Plan who shall comply with applicable law and give notice

7    to all entitled claimants. Accordingly, the treatment of Allowed Class 5 Claims set

8    forth in the Plan does not affect any legal, equitable or contractual rights to which the

9    Class 5 claimants are entitled.

10        **F.    Class 6 - Zumwalt Construction, Inc.**

11              **1.    Impairment and Voting.**

12              Class 6 is impaired by this Plan and, accordingly, the holder of

13   Allowed Claims classified into Class 6 is entitled to vote its Claims to accept or reject

14   this Plan.

15              **2.    Treatment.**

16              By virtue of the compromise settlement reached on September

17   12, 2011 ZCI will pay MSI on its pass through claim, receive all remaining retainages

18   of the construction project, receive $332,114 on or before the Effective Date on

19   account of the bond proceeds funds diverted from it, be allowed a claim for $625,000

20   which will be paid in Class 6 prior to December 31, 2012 and prior to Class 9 and it

21   will waive all other claims against the District.

22              This results in elimination of MSI's pass through claim filed in the

23   amount of $791,150 and a sharp reduction in ZCI's claims against the District.

24              The District's objections and counter claims against ZCI and MSI

25   will be dismissed. Class 6 is impaired and does have the right to vote on the Plan.

26   //

27

28

**G.    Class 7 - United States Department of Agriculture.**

        **1.    Impairment and Voting.**

                Class 7 is unimpaired by this Plan since the treatment of this Class will not affect the legal, equitable or contractual right to which the holder of Claims in this Class is entitled and, accordingly, this Class is not entitled to vote to accept or reject this Plan.

        **2.    Treatment.**

                Under the Plan, Class 7 will receive $10,140 per month and retain its liens and security interests.

**H.    Class 8 - Administrative Convenience Claims.**

        **1.    Impairment and Voting.**

                Class 8 is unimpaired by this Plan and, accordingly, the holders of Allowed Claims classified into Class 8 are not entitled to vote their Allowed Administrative Convenience Claims to accept or reject this Plan.

        **2.    Treatment.**

                Attached as Exhibit B is a spreadsheet showing the claims included in Class 8. Class 8 claims are Allowed General Unsecured Claims in an amount not exceeding $3,000 totaling $59,081. Class 8 Allowed Claims shall be paid in full within fourteen days of the Effective Date.

**I.    Class 9 - General Unsecured Claims.**

        **1.    Impairment and Voting.**

                Class 9 is impaired by this Plan and, accordingly, the holders of Allowed Claims classified into Class 9 are entitled to vote their Allowed General Unsecured Claims to accept or reject this Plan.

        **2.    Treatment.**

                Exhibit C shows the general unsecured claims that have been

1   allowed by the Debtor, totaling about $3,000,000. There are other "unknown,"

2   "unliquidated," "to be determined" and disputed claims including Jablonsky, the

3   remaining construction litigation claims, SS# Plan #1, personal injury claims, medical

4   malpractice and claims stemming from rejections of executory contracts. The

5   District estimates the Class 9 claims ultimately allowed will range between

6   $3,000,000 and $4,000,000.

7      The holders of Allowed Claims in Class 9 will receive a <u>pro rata</u> share

8   of about $800,000.00 per year beginning on or before December 31, 2012 until paid

9   in full without interest.

10    **J.**     **Class 10 - Dental Surgery Center Partnership Claims.**

11      **1.**     **Impairment and Voting.**

12      Class 10 is unimpaired by this Plan and, accordingly, the holders

13   of Allowed Claims classified into Class 10 are not entitled to vote their Allowed

14   General Unsecured Claims to accept or reject this Plan in accordance with the Plan

15   Solicitation Order.

16      **2.**     **Treatment.**

17      The holders of Allowed Claims classified into Class 10 shall

18   receive nothing on account of their claims from the District. They shall look only to

19   Bloss Memorial Healthcare District for payment.

20                            **V.**

         **ACCEPTANCE OR REJECTION; CRAMDOWN**

21

22    **A.**     **Voting of Claims.**

23      Each holder of an Allowed Claim classified into Classes shall be entitled

24   to vote each such Claim to accept or reject this Plan.

25      With respect to any Impaired Class of Claims that fails to accept this

26   Plan, the District, as proponent of this Plan, intends to request that the Bankruptcy

27

28

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA              M:\S-U\Sierra Kings Health Care
KINGS HEALTH CARE DISTRICT DATED AS OF     15     District\Confirm\Final\Plan.ptw.092811.wpd
SEPTEMBER 15, 2011

1  Court nonetheless confirm this Plan pursuant to the so-called "cramdown" powers

2  set forth in Bankruptcy Code Section 1129(b).

### VI.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.     Assumption of Executory Contracts and Unexpired Leases.**

As a part of the Transaction, as to any executory contract or unexpired

lease that AH notifies the District in writing that it has duly elected to assume in the

manner and in the time period required by the ASA, the District shall make the

Assumption/Assignment Motion, which, if granted shall cause the District to assume

and assign such executory contracts and unexpired non residential real property

leases to AH.  Exhibit D sets out the executory contracts and unexpired leases to be

assumed or rejected.

In this case there are executory contracts and unexpired non residential

real property leases that the District will assume but not assign.

**B.     Cure Payments.**

After the provision of notice and the opportunity for a hearing on the

Assumption/Assignment Motion, in accordance with the Bankruptcy Rules, the

Bankruptcy Court shall resolve all disputes regarding: (a) the amount of any cure

payment to be made in connection with the assumption of any contract or lease; (b)

the ability of AH to provide "adequate assurance of future performance" within the

meaning of Section 365 of the Bankruptcy Code under the contract or lease to be

assumed; and (c) any other matter pertaining to such assumption and assignment.

Any party to an executory contract or unexpired lease that is included in the

Assumption/Assignment Motion that asserts that any payment or other performance

is due as a condition to the proposed assumption shall file with the Bankruptcy Court

and serve upon the District a written statement and accompanying declaration in

1  support thereof, specifying the basis for its claim within such deadline and in the

2  manner established for filing objections as shall be set forth in the

3  Assumption/Assignment Motion. The failure to timely file and serve such a statement

4  in accordance with the instructions set forth in the Assumption/Assignment Motion

5  shall be deemed to be a waiver of any and all objections to the proposed assumption

6  and any Claim for cure amounts of the agreement at issue.

7  　　　　C.　　**Rejection of Executory Contracts and Unexpired Leases.**

8  　　　　　　　The Rejection Motion shall seek authority to reject such executory

9  contracts and unexpired leases that AH has not elected to assume that the District

10  in the exercise of its business judgment deems warranted. The District anticipates

11  rejecting any executory contract and unexpired lease not previously rejected that is

12  not needed for it to continue operating as a healthcare district.

13  　　　　D.　　**Claims Arising from Rejection.**

14  　　　　　　　Proofs Of Claims arising from the rejection of executory contracts or

15  unexpired leases must be filed with the Bankruptcy Court and served on the District

16  no later than thirty (30) days after the date on which notice of entry of the order

17  approving the rejection is mailed. Any Claim for which a proof of Claim is not filed

18  and served within such time will be forever barred and shall not be enforceable

19  against the District or its assets, properties, or interests in property. Unless otherwise

20  ordered by the Bankruptcy Court, all such Claims that are timely filed as provided

21  herein shall be classified into Class 9 and treated accordingly.

22  　　　　　　　　　　　　　　**VII.**
　　**IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN**
23

24  　　　　A.　　**The Transaction.**

25  　　　　　　　AH will provide the following combination of cash and assumption of

26  liabilities to enable the District to implement this Plan and satisfy its obligations under

27

28

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA
KINGS HEALTH CARE DISTRICT DATED AS OF　　　17
SEPTEMBER 15, 2011

M:\S-U\Sierra Kings Health Care
District\Confirm\Final\Plan.ptw.092811.wpd

1    the Transaction described in this Plan:

2       By the Transaction, the District will sell to AH substantially all of its

3    personal property assets and clinics for $8,236,100 and lease for fifteen years certain

4    real property for $800,000 annually, subject to escalation, with an option to purchase.

5    The District will retain ownership of its real property, including the 4 +/- acres

6    adjacent to the hospital facility.

7       **B.**      **Claims and Causes of Action.**

8       The Plan provides for the retention of all of the District's claims, causes

9    of action, rights of recovery, rights of offset, recoupment rights to refunds and similar

10    rights.

11       The failure to list in the Disclosure Statement any potential or existing

12    Right of Action retained by the District under the ASA generally or specifically is not

13    intended to and shall not limit the rights of the District to pursue any such action.

14    Unless a Right of Action is expressly waived, relinquished, released, compromised

15    or settled in this Plan, the District expressly reserves all Rights of Action for later

16    adjudication and, as a result, no preclusion doctrine, including the doctrines of res

17    judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial,

18    equitable or otherwise) or laches, shall apply to such Rights of Action upon or after

19    the confirmation or consummation of this Plan or the Effective Date. In addition, the

20    District expressly reserves the right to pursue or adopt against any other entity any

21    claims alleged in any lawsuit in which the District is a defendant or an interested

22    party.

23                 **VIII.**
                **DISTRIBUTIONS**

24

25    **A.**      **Distribution Agent.**

26       The District shall retain agents to perform or assist it in carrying out the

27

28    PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA          M:\S-U\Sierra Kings Health Care
       KINGS HEALTH CARE DISTRICT DATED AS OF     18     District\Confirm\Final\Plan.ptw.092811.wpd
       SEPTEMBER 15, 2011

1   administration of the Plan, which agents may serve without bond. The initial agent

2   shall be designated by the Board prior to Confirmation. The District may provide

3   reasonable compensation to such agent(s) without further notice or Court approval.

4   All distributions to any holder of an Allowed Claim shall be made at the address of

5   such holder as set forth in the books and records of the District, unless the District

6   has been notified by such holder in a writing that contains an address for such holder

7   different from the address reflected in its books and records. All distributions to the

8   Bondholders shall be made in accordance with the documents that govern

9   distributions on the Bonds by the persons charged with this responsibility.

10        **B.     Delivery of Distributions.**

11        All distributions to any holder of an Allowed Claim shall be made at the

12   address of such holder as set forth in the books and records of the District or its

13   agents, unless the District has been notified by such holder in a writing that contains

14   all address for such holder different from the address reflected in its books and

15   records. All distributions to the Bondholders shall be made in accordance with the

16   Bond Documents that govern distributions to the Bonds by the persons charged with

17   this responsibility.

18        **C.     Undeliverable Distributions.**

19        **1.     Holding of Undeliverable Distributions.**

20        If any distribution to any holders is returned to the District as

21   undeliverable, no further distributions shall be made to such holder unless and until

22   the District is notified in writing of such holder's then-current address. Unless and

23   until the District is so notified, such distribution shall be deemed to be "Unclaimed

24   Property" and shall be dealt with in accordance with Section VII.C.2.

25        **2.     Unclaimed Property.**

26        If any entity entitled to receive distributions pursuant to this Plan

27

28

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA
KINGS HEALTH CARE DISTRICT DATED AS OF      19      M:\S-U\Sierra Kings Health Care
SEPTEMBER 15, 2011          District\Confirm\Final\Plan.ptw.092811.wpd

1   does not present itself on the Effective Date or on such other date all which such

2   entity becomes eligible for distribution, such distributions shall be deemed to be

3   "Unclaimed Property."  Unclaimed Property shall be set aside and held in a

4   segregated account to be maintained by the District pursuant to the terms of this

5   Plan.

6            **3.**      **Notification and Forfeiture of Unclaimed Property.**

7   If any claimant entitled to receive distributions pursuant to the

8   Plan does not present itself on the Effective Date or on such other date on which

9   such claimant becomes eligible for distribution, such distributions shall be deemed

10  to be "Unclaimed Property."  Unclaimed Property shall be set aside and held by the

11  District in a segregated account to be maintained by the District pursuant to the terms

12  of the Plan.

13  If any distribution is returned as undeliverable, the District will file

14  with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that

15  identifies the name and last-known address of holders of the Unclaimed Property; the

16  District otherwise will not be required to attempt to locate any such claimant entity.

17  On the fourth anniversary of the Effective Date, all remaining Unclaimed Property and

18  accrued interest or dividends earned thereon will be remitted to and vest in the

19  District.

20           **D.**      **Distributions of Cash.**

21  Any payment of Cash to be made by the District  pursuant to this Plan

22  shall be made by check drawn on a domestic bank or by wire transfer, at the sole

23  option of the District.

24           **E.**      **Timeliness of Payments.**

25  Any payments at distributions to be made pursuant to this Plan shall be

26  deemed to be timely made if made within thirty (30) days after the dates specified in

27

28

1    this Plan.  Whenever any distribution to be made under this Plan ·shall be due on a

2    day that is a Saturday, Sunday, or legal holiday; such distribution instead shall be

3    made, without interest, on the immediately succeeding day that is not a Saturday,

4    Sunday, or legal holiday, but shall be deemed to have been made on the date due.

5         **F.**      **Compliance with Tax Requirements.**

6         The District shall comply with all tax withholding and reporting

7    requirements imposed on it by any government unit, and all distributions pursuant to

8    this Plan shall be subject to such withholding and reporting requirements.    In

9    connection with each distribution with respect to which the filing of an information

10    return (e.g., Internal Revenue Service Form 1099) or withholding is required, the

11    District shall file such information return with the Internal Revenue Service and

12    provide any required statements in connection therewith to the recipients of such

13    distribution, or effect any such withholding and deposit all moneys so withheld to the

14    extent required by law.  With respect to any entity from whom a tax identification

15    number, certified tax identification number, or other tax information is required by law

16    to avoid withholding has not been received by the District, the District at its sole

17    option, may withhold ·the amount required and distribute the balance to such entity

18    or decline to make such distribution until the information is received.

19         **G.**      **Time Bar to Cash Checks.**

20         Checks issued by the District on account of Allowed Claims shall be null

21    and void if not negotiated within ninety (90) days from and after the date of issuance

22    thereof.  Requests for reissuance of any check shall be made directly to the District

23    by the holder of the Allowed Claim with respect to which such check originally was

24    issued.  Any claim in respect of such voided check shall be made on or before the

25    second anniversary of the Effective Date.  After such date, all Claims in respect of

26    voided checks shall be discharged and forever barred and the District shall retain all

27

28

1    moneys related thereto.

2        **H.    No De Minimis Distributions.**

3        Notwithstanding any other provision of this Plan, no cash payment of

4    less than twenty-five dollars ($25) shall be made by the District on account of any

5    Allowed Claim.

6        **I.    No Distributions on Account of Disputed Claims.**

7        Notwithstanding anything to the contrary in this Plan, no distributions

8    shall be made on account of any part of any Disputed Claim until such Claim

9    becomes Allowed (and then only to the extent so Allowed).  Distributions made after

10   the Effective Date in respect of Claims that were not Allowed as of the Effective Date

11   (but which later became Allowed) shall be deemed to have been made as of the

12   Effective Date.

13       **J.    No Postpetition Interest Accrual.**

14       Unless otherwise specifically provided in this Plan or Allowed by order

15   of the Bankruptcy Court, the District shall not be required to pay to any holder of a

16   Claim any interest, penalty or late charge accruing with respect to such Claim on or

17   after the Petition Date.

18       **K.    Patient Refund Reserve**

19       The District may have been overpaid by some patients.  The amount of

20   the overpayments cannot be fixed at present and the identities of the claimants are

21   not certain.

22       To deal with this uncertainty, the District will create a $25,000 reserve

23   account from which these overpayment class can be paid for the applicable period

24   of the statute of limitations at which time the remaining funds may be used for District

25   purposes.

26   //

27

**L.     Governance**

The District will continue in existence.  It will not operate a hospital but it will own real property and need to manage its business affairs, collect rent due, maintain its real property assets and comply with the Plan.

The District's board of trustees will continue to exist and govern the District's affairs in accordance with applicable laws and the Plan.  The District will not expend any funds on new health care activities until and unless all payments under the Plan are current and shown to remain current.

The District shall employ or contract for staff to administer the Plan and handle the District's affairs and make distributions pursuant to the Plan. Compensation for such services will be at no more than market rates.

So long as the District is in compliance with the terms of all distributions called for by the Plan, and not in default of the Plan, the District may provide for other health care needs of the residents of the District, not spending more than $60,000 per year for all of the District's administrative and health care expenditures, provided the same do not compete with AH.

**M.     Facility Reserve Account**

The arrangement with Adventist Health calls for a triple net lease with annual lease payments of $800,000, with escalation, payable monthly.  The District shall maintain prudent reserves on account of its continued ownership of the facility.

**IX.**
**DISPUTED CLAIMS; OBJECTIONS TO CLAIMS.**

**A.     Claims Objection Deadline.**

The District shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part.  Unless otherwise ordered by the Bankruptcy Court, the District shall

1    file and serve any such objections to Claims by not later than ninety (90) days after

2    the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by

3    not later than ninety (90) days after the date of filing of such Claims).

4        **B.    Reserves, Payments, and Distributions with Respect to Disputed
         Claims.**

5

6            At such time as a Disputed Claim becomes an Allowed Claim, in whole

7    or in part, the District shall distribute to the holder thereof the distributions, if any, to

8    which such holder is then entitled under this Plan.  Such distributions, if any, shall be

9    made as soon as practicable after the date that the order or judgment of the

10   Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such

11   other date as the Claim becomes an Allowed Claim), but in no event more than thirty

12   (30) days thereafter.  Unless otherwise specifically provided in this Plan or Allowed

13   by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that

14   later become Allowed Claims.

15                                     **X.**
                              **EFFECT OF CONFIRMATION**

16

17   **A.    Discharge of the District.**

18            Pursuant to Section 944 of the Bankruptcy Code, upon the Effective

19   Date, the District shall be discharged from all debts (as defined in the Bankruptcy

20   Code) of the District and Claims against the District other than (a) any debt

21   specifically and expressly excepted from discharge by this Plan or the Confirmation

22   Order, or (b) any debt owed to an entity that, before the confirmation of this Plan, had

23   neither notice nor actual knowledge of the Chapter 9 Case.

24            The rights afforded in this Plan and the treatment of all Holders of

25   Claims, be the Claims Impaired or Unimpaired under this Plan, shall be in exchange

26   for and in complete satisfaction, discharge and release of all Claims of any nature

27

28

1   whatsoever arising on or before the Effective Date, known or unknown including any

2   interest accrued or expenses incurred thereon from and after the Petition Date,

3   whether against the District or any of its assets or interests in property. Except as

4   otherwise provided herein, upon the Effective Date, all Claims against the District

5   shall be deemed to be satisfied, discharged and released in full, be they Impaired or

6   Unimpaired under this Plan.

7         **B.**     **Injunction.**

8         Except as otherwise expressly provided in this Plan, all entities who

9   have held, hold or may hold pre-Effective Date Claims shall be permanently enjoined

10   from and after the Effective Date, from: (a) commencing or continuing in any manner

11   any action or other proceeding of any kind with respect to any such pre-Effective

12   Date Claim against the District or its property; (b) enforcing, attaching, collecting, or

13   recovering by any manner or means any judgment, award, decree or order against

14   the District or its property with respect to such pre-Effective Date Claims; (c) creating,

15   perfecting, or enforcing any lien or encumbrance of any kind against the District or

16   its property; and (d) asserting any right of setoff, subrogation or recoupment of any

17   kind against any obligation due to the District with respect to any such pre-Effective

18   Date Claim, except as otherwise permitted by Section 553 of the Bankruptcy Code.

19         **C.**     **Term of Existing Injunctions or Stays.**

20         Unless otherwise provided; all injunctions or stays provided for in the

21   Chapter 9 Case pursuant to Sections 105, 362, or 922 of the Bankruptcy Code, or

22   otherwise, and in existence on the Confirmation Date shall remain in full force and

23   effect until the Effective Date.

**XI.**
**RETENTION OF JURISDICTION**

26   Following the Effective Date, the Bankruptcy Court shall retain and have

1    exclusive jurisdiction over any matter (i) arising under the Bankruptcy Code and

2    relating to the District, (ii) arising in or related to the Chapter 9 Case or this Plan or

3    the Plan Documents, and (iii) otherwise for the following:

4          1.     to resolve any objection duly and timely filed to any claims;

5          2.     to resolve any matters related to the assumption, assumption and

6    assignment, or rejection of any executory contract or unexpired lease to which

7    the District is a party or with respect to which the District may be liable, and

8    to hear, determine and, if necessary, liquidate, any Claims arising therefrom,

9    including those matters related to the amendment after the Effective Date of

10    this Plan, and to add any executory contracts or unexpired leases to the

11    Rejection Motion, as necessary;

12          3.     to enter such orders as may be necessary or appropriate to implement

13    or consummate the provisions of this Plan, the Plan Documents, and all other

14    contracts, instruments, releases, and other agreements or documents related

15    to this Plan;

16          4.     to determine any and all motions, adversary proceeding, applications

17    and contested or litigated matters that may be pending on the Effective Date

18    or that, pursuant to this Plan, may be instituted by the District after the

19    Effective Date or that are instituted by any holder of a Claim before or after the

20    Effective Date concerning any matter based upon, arising out of, or relating

21    to the Chapter 9 Case, whether or not such action initially is filed in the

22    Bankruptcy Court or any other court;

23          5.     to ensure that distributions to holders of Allowed Claims are

24    accomplished as provided herein;

25          6.     to hear and determine any objections to Claims or to Proofs of Claim

26    filed, both before and after the Effective Date, including any objections to the

27

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA            M:\S-U\Sierra Kings Health Care
28    KINGS HEALTH CARE DISTRICT DATED AS OF       26      District\Confirm\Final\Plan.ptw.092811.wpd
SEPTEMBER 15, 2011

classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

7.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

8.      to issue such orders in aid of execution of this Plan, to the extent authorized by Section 1142(b) of the Bankruptcy Code;

9.      to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

10.     to hear and determine all applications for awards of compensation for professional services rendered and reimbursement of expenses incurred prior to the Effective Date;

11.     to hear and determine all disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the Confirmation Order or the extent of any entity's obligations incurred in connection with or released under this Plan or the Confirmation Order;

12.     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

13.     to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement (including the Plan Documents);

14.    to hear any other matter or for any purpose specified in the

Confirmation Order that is not inconsistent with the Bankruptcy Code;

15.    to hear and determine any rights of action retained by the District; and

16.    to enter a final decree Closing the Chapter 9 Case.

## XII.
## CONDITIONS PRECEDENT

**A.    Condition Precedent to Confirmation.**

The entry of the Confirmation Order in form and substance satisfactory to the District shall be a condition precedent to confirmation of this Plan.

**B.    Conditions Precedent to Effective Date.**

The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur, and this Plan shall be of no force and effect, until the Effective Date.  The occurrence of the Effective Date is subject to the satisfaction (or waiver as set forth in Section XII.C) of the following conditions precedent:

**1.    Confirmation Order.**  The Confirmation Order shall have been entered.

**2.    Plan Documents.**    All agreements and instruments contemplated by, or to be entered into pursuant to this Plan shall be in form and substance acceptable to the District and shall have been duly and validly executed and delivered, or deemed executed by the parties thereto, and all conditions to their effectiveness shall have been satisfied or waived.

**3.    Sale Closing.**  The occurrence of the Sale Closing Date with respect to the Transaction.

**4.    Timing.** The Effective Date shall occur on the first day after which the conditions set forth in Section XII.B are satisfied or waived; *provided* that, unless otherwise ordered by the Bankruptcy Court, the Effective Date must occur by

1    no later than four months after the Confirmation Date.

2         **C.    Waiver of Conditions to Effective Date.**

3              The District may waive in whole or in part any condition to the

4    effectiveness of this Plan.  Any such waiver of a condition may be effected at any

5    time, without notice or leave or order of the Bankruptcy Court and without any formal

6    action, other than the filing of a notice of such waiver with the Bankruptcy Court.

7         **D.    Effect of Failure of Conditions.**

8              In the event that the conditions to effectiveness of this Plan have not

9    been timely satisfied or waived, and upon notification submitted by the District to the

10   Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions

11   under this Plan shall be made, (c) the District and all holders of Claims shall be

12   restored to the *status quo* as of the day immediately preceding the Confirmation Date

13   as though the Confirmation Date never occurred, and (d) all of the District's

14   obligations with respect to the Claims shall remain unchanged and nothing contained

15   herein shall be deemed to constitute a waiver or release of any claims by or against

16   the District or any other entity or to prejudice in any manner the rights of the District

17   or any entity in any further proceedings involving the District.

18                              **XIII.**
                     **MISCELLANEOUS PROVISIONS**
19

20        **A.    Dissolution of the Committee.**

21             On the Effective Date the Committee shall be released and discharged

22   of and from all further authority, duties, responsibilities and obligations relating to and

23   arising from and in connection with the Chapter 9 Case and the Committee shall be

24   deemed dissolved and its appointment terminated.  The professionals retained by the

25   Committee and the members thereof shall not be entitled to compensation or

26   reimbursement of expenses for any services rendered or expenses incurred after the

27

28

1    Effective Date, except for services rendered and expenses incurred in connection

2    with any applications by such professionals or committee members for allowance of

3    Professional Claims timely filed after the Effective Date as provided in this Plan.

4          **B.**    **Severability.**

5          If prior to the Confirmation Date any term or provisions of this Plan is

6    held, by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy

7    Court, with the consent of the District shall have the power to alter and interpret such

8    term or provision to make it valid or enforceable to the maximum extent practicable,

9    consistent with the original purpose of the term or provision held to be invalid, void

10    or unenforceable, and such term or provision shall then be applicable as altered or

11    interpreted. Notwithstanding any such holding, alteration or interpretation, the

12    remainder of the terms and provisions of this Plan shall remain in full force and effect

13    and shall in no way be affected, impaired or invalidated by such holding, alteration

14    or interpretation. The Confirmation Order shall constitute a judicial determination and

15    shall provide that each term and provision of this Plan, as it may have been altered

16    or interpreted in accordance with the foregoing, is valid and enforceable pursuant to

17    its terms.

18          **D.**    **Governing Law.**

19          Except to the extent that the Bankruptcy Code or other federal law is

20    applicable, or to the extent that an Exhibit hereto or Plan Document provides

21    otherwise, the rights, duties and obligations arising under this Plan shall be governed

22    by, and construed and enforced in accordance with, the laws of the State of

23    California, without giving effect to principles of conflicts of laws.

24          **E.**    **Effectuating Documents and Further Transactions.**

25          Each of the officials and employees of the District is authorized to

26    execute, deliver, file, or record such contracts, instruments, releases, indentures,

27

28    PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA            M:\S-U\Sierra Kings Health Care
KINGS HEALTH CARE DISTRICT DATED AS OF     30     District\Confirm\Final\Plan.ptw.092811.wpd
SEPTEMBER 15, 2011

1  and other agreements or documents and take such actions as may be necessary or

2  appropriate to effectuate and further evidence the terms and provisions of this Plan.

3  **F.    Notice of Effective Date.**

4  On or before ten (10) days after occurrence of the Effective Date, the

5  District shall mail or cause to be mailed to all holders of Claims a Notice that informs

6  such holders of: (a) entry of the Confirmation Order; (b) the occurrence of the

7  Effective Date; (c) the procedures for changing an address of record pursuant to

8  Section VII.B; and (d) such other matters as the District deems to be appropriate.

9  **G.    Final Decree**

10  As soon as practicable after consummation of the Plan by

11  commencement of payments under the Plan, the Proponent may petition the

12  Bankruptcy Court for a Final Decree pursuant to BR 3022, and by serving notice of

13  such motion on the twenty largest Class 9 creditors and the United States Trustee's

14  Office.

15  Dated: September 29, 2011       Respectfully submitted,
                                  Sierra Kings Health Care District

16

17  By: _____
                        Sanford Haskins

18                          Interim Chief Executive Officer

19  Dated: September 29, 2011      _____

20                          Kathleen Omachi, Chair of Board of
                        Directors

21

22  Dated: September 29, 2011      WALTER & WILHELM LAW GROUP
                        a Professional Corporation

23

24  By: _____

25                          Riley C. Walter, Attorneys for Sierra
                        Kings Health Care District

26  //

27

28

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA
KINGS HEALTH CARE DISTRICT DATED AS OF      31      M:\S-U\Sierra Kings Health Care
SEPTEMBER 15, 2011                            District\Confirm\Final\Plan.ptw.092811.wpd

1    Dated: September 29, 2011        FISHMAN, LARSEN, GOLDRING &
                                              ZEITLER

2

3                                     By:_____

4                                     Michael W. Goldring, General Counsel
                                     for Sierra Kings Health Care District

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAN FOR THE ADJUSTMENT OF DEBTS OF SIERRA               M:\S-U\Sierra  Kings  Health  Care
KINGS HEALTH CARE DISTRICT DATED AS OF      32      District\Confirm\Final\Plan.ptw.092811.wpd
SEPTEMBER 15, 2011

## EXHIBITS

**Exhibit A**          Letter of Intent/ASA

**Exhibit B**          Spreadsheet of Class 8 Claims

**Exhibit C**          Spreadsheet of Class 9 Claims

**Exhibit D**          Leases/Executory Contracts – Assumed and Rejected

# **TABLE OF CONTENTS**

I.      DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION  . 2
        A.    Definitions.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.    Rules of Construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     TREATMENT   AND   DEADLINE   FOR   THE   ASSERTION   OF
        ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS  . . . . . . . . 9
        A.    Treatment of Administrative Claims. . . . . . . . . . . . . . . . . . . . 9
              1.     Treatment of Administrative Claims, Except for Professional
                     Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        B.    Priority Claims in Chapter 9. . . . . . . . . . . . . . . . . . . . . . . . . . 10
        C.    Deadline for the Filing and Assertion of Professional Claims.  . . . 10

III.    DESIGNATION OF CLASSES OF CLAIM  . . . . . . . . . . . . . . . . . . . . . 10

IV.     TREATMENT OF CLAIMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        A.    Class 1 - Claims of the Holders of Sierra Kings Health Care
              District Revenue Bonds, Series 2006 A and 2006 B.  . . . . . . . . . 11
              1.     Impairment and Voting.  . . . . . . . . . . . . . . . . . . . . . . . . 11
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        B.    Class 2 - Sierra Kings Health Care District General Obligation
              Bonds, Election of 2000, Series 2002. . . . . . . . . . . . . . . . . . . . 11
              1.     Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . 11
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        C.    Class 3 - Sierra Kings Health Care District General Obligation
              Bonds, Election of 2006, Series 2007. . . . . . . . . . . . . . . . . . . . 12
              1.     Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . 12
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        D.    Class 4 - Sierra Kings Health Care District General Obligation
              Bonds, Election of 2006, Series 2009. . . . . . . . . . . . . . . . . . . . 12
              1.     Impairment and Voting . . . . . . . . . . . . . . . . . . . . . . . . . 12
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        E.    Class 5 - Interests of SSA #1 Plan Participants. . . . . . . . . . . . . 12
              1.     Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . 12
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        F.    Class 6 - Zumwalt Construction, Inc. . . . . . . . . . . . . . . . . . . . . 13
              1.     Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . 13
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        G.    Class 7 - United States Department of Agriculture. . . . . . . . . . . . 14
              1.     Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . 14
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        H.    Class 8 - Administrative Convenience Claims. . . . . . . . . . . . . . . 14
              1.     Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . . . . 14
              2.     Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.    Class 9 - General Unsecured Claims. . . . . . . . . . . . . . . . 14
    1.    Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . 14
    2.    Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
J.    Class 10 - Dental Surgery Center Partnership Claims. . . . . . . . . 15
    1.    Impairment and Voting. . . . . . . . . . . . . . . . . . . . . . 15
    2.    Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.    ACCEPTANCE OR REJECTION; CRAMDOWN . . . . . . . . . . . . . . . . . 15
A.    Voting of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
A.    Assumption of Executory Contracts and Unexpired Leases. . . . . 16
B.    Cure Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
C.    Rejection of Executory Contracts and Unexpired Leases. . . . . . 17
D.    Claims Arising from Rejection. . . . . . . . . . . . . . . . . . . . . 17

VII.    IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS
PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
A.    The Transaction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
B.    Claims and Causes of Action. . . . . . . . . . . . . . . . . . . . . 18

VIII.    DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
A.    Distribution Agent. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
B.    Delivery of Distributions. . . . . . . . . . . . . . . . . . . . . . . . 19
C.    Undeliverable Distributions. . . . . . . . . . . . . . . . . . . . . . 19
    1.    Holding of Undeliverable Distributions. . . . . . . . . . . 19
    2.    Unclaimed Property. . . . . . . . . . . . . . . . . . . . . . . 19
    3.    Notification and Forfeiture of Unclaimed Property. . . . . 20
D.    Distributions of Cash. . . . . . . . . . . . . . . . . . . . . . . . . . 20
E.    Timeliness of Payments. . . . . . . . . . . . . . . . . . . . . . . . 20
F.    Compliance with Tax Requirements. . . . . . . . . . . . . . . . . . 21
G.    Time Bar to Cash Checks. . . . . . . . . . . . . . . . . . . . . . . 21
H.    No De Minimis Distributions. . . . . . . . . . . . . . . . . . . . . . 22
I.    No Distributions on Account of Disputed Claims. . . . . . . . . . 22
J.    No Postpetition Interest Accrual. . . . . . . . . . . . . . . . . . . . 22
K.    Patient Refund Reserve . . . . . . . . . . . . . . . . . . . . . . . . 22
L.    Governance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
M.    Facility Reserve Account . . . . . . . . . . . . . . . . . . . . . . . 23

IX.    DISPUTED CLAIMS; OBJECTIONS TO CLAIMS. . . . . . . . . . . . . . . 23
A.    Claims Objection Deadline. . . . . . . . . . . . . . . . . . . . . . . 23
B.    Reserves, Payments, and Distributions with Respect to Disputed
Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

X.
     EFFECT OF CONFIRMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     A.    Discharge of the District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     B.    Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     C.    Term of Existing Injunctions or Stays. . . . . . . . . . . . . . . . . . . . . 25

XI.
     RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XII.
     CONDITIONS PRECEDENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     A.    Condition Precedent to Confirmation. . . . . . . . . . . . . . . . . . . . . 28
     B.    Conditions Precedent to Effective Date. . . . . . . . . . . . . . . . . . . 28
           1.    Confirmation Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
           2.    Plan Documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
           3.    Sale Closing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
           4.    Timing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     C.    Waiver of Conditions to Effective Date. . . . . . . . . . . . . . . . . . . 29
     D.    Effect of Failure of Conditions. . . . . . . . . . . . . . . . . . . . . . . . . 29

XIII.
     MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . 29
     A.    Dissolution of the Committee. . . . . . . . . . . . . . . . . . . . . . . . . . 29
     B.    Severability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     D.    Governing Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     E.    Effectuating Documents and Further Transactions. . . . . . . . . . . 30
     F.    Notice of Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
     G.    Final Decree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31